EDWARD DELK

V.

VIRGINIA STATE BAR

Record No. 860133

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

\* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

S. W. Tucker (Hill, Tucker & Marsh, on briefs), for appellants.

Neil A. G. McPhie, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; James T. Moore, III, Senior Assistant Attorney General; Diane Langley, Assistant Attorney General, on brief), for appellee.

Amicus Curiae: Old Dominion Bar Association (Phillipe Benior; William T. Mason, Jr.; Debevoise & Plimpton; Robinson, Eichler, Zaleski and Mason, on brief), for appellant.

CARRICO, C.J., delivered the opinion of the Court.

In this appeal of right from an order of the Virginia State Bar Disciplinary Board (the Board), Edward Delk, a Norfolk attorney, challenges the Board's action in suspending for three years his license to practice law in this Commonwealth. The suspension was based upon the Board's finding that Delk had violated Disciplinary Rules 9-102(A), -102(B)(3), and -102(B)(4),[1] all of which

---

[1] DR 9-102. *Preserving Identity of Funds and Property of a Client.* — (A) All funds of clients paid a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

deal with a lawyer's duties concerning the handling of client funds and property.

The record shows that in the years 1981 and 1982, Delk represented the Berkley Citizens Mutual Savings and Loan Association of Norfolk (the Association) in connection with real estate loans made by the Association. In April 1981, the Association employed Delk to close a $42,000 loan to Wilson Washington to facilitate his purchase of a home upon which it was foreclosing.

On April 30, 1981, the Association delivered to Delk its check for $40,410.58, representing the amount of the Washington loan less the Association's charges. Delk was to close the loan, withhold his closing costs, and, because the Association was "selling real estate owned," disburse the balance to the Association "as soon as possible" after the closing.

Delk deposited the check in his trust account on April 30 and proceeded to close the loan. He failed, however, to disburse the balance, amounting to $38,398.26, to the Association.

Some fourteen months later, the Association discovered it had not received payment from Delk of the amount due on the Washington loan transaction. When an official of the Association told Delk the loan proceeds had not been received, Delk had an audit made of his trust account. The audit confirmed that the Association had not been paid and also revealed that there were insufficient funds in the account to cover payment of the amount due the Association.

Delk then applied for and secured a loan from the Association for $50,000, giving his home as security. On July 2, 1982, using part of the proceeds from this loan, Delk paid the Association the amount of $38,398.26 due on the Washington loan transaction. About six months later, Delk paid the interest accruing on the $38,398.26 figure during the time the money was withheld from the Association.

Included in the record of this case as exhibits are bank statements showing the status of Delk's trust account during the fourteen-month period from the time Delk deposited the $40,410.58

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client or another as requested by such person the funds, securities, or other properties in the possession of the lawyer which such person is entitled to receive.

check on April 30, 1981, until the time he paid the Association on July 2, 1982. These statements show that during this period, the account was overdrawn 24 times, ranging in amount from as little as $16.06 to as much as $21,386.50. The statements also show that on 217 business days during the same period, the balance in the account was insufficient to pay the $38,398.26 balance due the Association.

Also included in the record as exhibits are 86 checks drawn on the trust account during the period in question. Totalling some $73,800, these checks were all signed by Delk and made payable to himself. Some bore explanatory language such as "Payroll Account," "Loan," "Loan Transfer," and "Transfer to Business Account." Many bore no explanation at all and are not satisfactorily explained elsewhere in the record.

We first consider a motion made by the State Bar to strike several assignments of error filed by Delk. The State Bar contends that these assignments were not filed timely and should not be considered.

The Board's motion is based upon Part 6, § IV, Para. 13(G)(2), Rules of Court. This paragraph provides that an attorney appealing from an order of the Board "shall file with the Executive Director [of the State Bar] a notice of appeal and assignments of error within twenty-one days after the order of the Board is mailed to him or to his counsel." The paragraph provides further that the filing of a notice of appeal and assignments of error "within the time prescribed is hereby determined to be a jurisdictional requirement."

The record shows that the Board entered its order suspending Delk's license on November 19, 1985, and that the order was mailed to Delk on December 13, 1985. Delk filed a notice of appeal and assignments of error on December 18, 1985, well within the twenty-one day period prescribed by Para. 13(G)(2). On May 12, 1986, however, Delk filed additional assignments of error, raising new questions, and also designated for printing certain evidentiary material which had not been proffered or introduced before the Board.

We think the State Bar's motion to strike is well-taken and should be granted. Paragraph 13(G)(2) clearly establishes the timely filing of assignments of error as a jurisdictional prerequisite to the consideration of questions presented by such assignments. Just as clearly, Delk's filing of the additional assignments of error

was untimely. Hence, we will not consider the additional assignments.[2]

This leaves for consideration two original assignments of error upon which Delk relies in seeking reversal of the Board's action. Both these assignments relate to the sanction imposed upon Delk and present the single question whether the sanction is "arbitrary and excessive" or "violates fundamental fairness."

Delk first contends that "[t]he discipline prescribed in the instant case is arbitrary and excessive [because] no client has filed a complaint against [him], . . . no client has lost any money, and . . . no finding of a breach of moral turpitude has been made." Delk adds that suspension of his license was unwarranted because his "poor accounting methods had been corrected months before any allegations of misconduct were made."

█ We disagree with Delk. There is no provision in the statutes or rules relating to the discipline of attorneys which requires a complaint by a client before lawyer misconduct may be investigated. Indeed, Code § 54-74, relating to judicial suspension or revocation of lawyers' licenses, permits complaint by "any person." And Part 6, § IV, Para. 13(B)(5)(a), Rules of Court, relating to proceedings before district committees, provides that upon receipt of a complaint *or* evidence that lawyer misconduct has occurred, the appropriate district committee shall investigate the matter. Hence, a district committee may instigate a disciplinary proceeding on its own, as the present proceeding apparently was instigated.

█ Neither is the loss of money by a client a prerequisite to the suspension of an attorney's license for mishandling the client's funds. A similar contention was made in *Maddy* v. *District Committee*, 205 Va. 652, 139 S.E.2d 56 (1964), a case involving several charges, including allegations the lawyer delayed in prosecuting clients' cases. The lawyer argued on appeal that his license should not have been suspended because "none of his clients suffered 'any prejudice to his legal rights' as a result of [the lawyer's] delay." *Id.* at 658, 139 S.E.2d at 61. We said, however, that the lack of prejudice was "not enough to exonerate" the lawyer because "[i]n disbarment proceedings it is not necessary to show

---

[2] The State Bar's motion to strike also includes the evidentiary material Delk designated for printing when he filed his additional assignments of error. Because this material was neither proffered nor introduced before the Board, it will also be stricken and will not be considered. *See* Rule 5:10.

that an attorney's actions prejudiced his client's legal rights." *Id.* It is sufficient if there is "potential injury to a client." ABA *Lawyers' Manual on Professional Conduct* 01:818 (1986). Here, there was great potential for injury in the way Delk treated the Association's funds.

Nor is it necessary in a disciplinary proceeding to show that moral turpitude exists before a lawyer's license may be suspended for mishandling client funds. Whether Delk's failure to pay the Association resulted from mere inadvertence, as he maintains, or from intentional wrongdoing, which he denies, is immaterial. "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property . . . ." *Id.* It is enough, therefore, that Delk should have known he was misusing the Association's money. And, given the fact that the trust account was overdrawn 24 times during the period in question, with the balance in the account insufficient on 217 business days to pay the Association, we think it would not be unreasonable to say Delk should have known he was dealing improperly with client property.

Incidental to his moral turpitude argument, Delk suggests on brief that it was inappropriate for the Board to suspend his license for "a perceived inability on his part to have paid [the Association]." Any argument concerning Delk's ability to pay, however, merely begs the question. Had Delk preserved the identity of the Association's funds as the Disciplinary Rules require, the question of his ability to pay the Association the balance due would never have arisen.

We find unpersuasive Delk's further argument that his license should not have been suspended because his "poor accounting methods had been corrected months before any allegations of misconduct were made." The trouble with Delk's argument is that it assumes "poor accounting methods" were responsible for the shortages in the trust account, and, on this record, that is not a fair assumption. Rather, the finding is compelled that the primary reason the shortages occurred was Delk's breach of his duty to deal properly with client property.

Delk next contends that "[t]he punishment [imposed upon him] violates fundamental fairness [because] it exceeds or parallels the punishment given in cases where willful and fraudulent misconduct existed." Delk cites *Old* v. *Commonwealth*, 193 Va. 152, 67 S.E.2d 921 (1951) (two-year suspension for mishandling funds of

organization of which lawyer was treasurer where purpose to conceal was shown), *Maddy* v. *District Committee*, 205 Va. 652, 139 S.E.2d 56 (1964) (six-month suspension for five counts of misconduct, including "serious" charge that lawyer gave client paper and represented it was divorce decree when no decree entered), *Blue* v. *Seventh District Committee*, 220 Va. 1056, 265 S.E.2d 753 (1980), *cert. denied*, 448 U.S. 904 (1981) (three-month suspension for fabricating $1,000 fee charge to frustrate client's effort to collect refund).

Delk argues that by comparison with these cases, his case merited only a reprimand. He apparently does not recognize, however, that the record in this case demonstrates an egregious instance of the mishandling of client funds. He seemingly does not realize how shocking the revelation is that he overdrew his trust account consistently and wrote numerous checks to his own order, with explanations indicating an improper use of the funds or with no explanation at all.

> "In arriving at the punishment to be imposed [in disciplinary proceedings], precedents are of little aid, and each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession."

*Maddy*, 205 Va. at 658, 139 S.E.2d at 60 (quoting 7 C.J.S. *Attorney and Client* § 38 (1937)). *See also Gibbs* v. *Virginia State Bar*, 232 Va. 39, 42, 348 S.E.2d 209, 211 (1986); *Pickus* v. *Virginia State Bar*, 232 Va. 5, 15, 348 S.E.2d 202, 208-09 (1986).

The sanction imposed in this case was within the limits the Board is authorized to impose. Part 6, § IV, Para. 13(C)(6)(c), Rules of Court. Nothing other than the argument of counsel suggests that the Board abused its discretion in this case.

Accordingly, we will affirm the Board's order suspending for three years Delk's license to practice law in this Commonwealth. Because the suspension has been stayed during the pendency of this appeal, the suspension will commence July 1, 1987. Delk shall give notice, by certified mail, of his suspension to all clients for whom he is currently handling matters and to all presiding judges

and opposing attorneys in litigation. Delk shall further make immediate appropriate arrangements for the disposition of those matters presently in his care, in conformity with the wishes of his clients.

*Affirmed.*

THOMAS, J., concurring in part and dissenting in part.

I agree with the majority that on the record presented to the Court in this case, the Disciplinary Board did not err in finding that Edward Delk violated Disciplinary Rules 9-102(A), -102(B)(3), and -102(B)(4), all of which concern handling client funds. However, Delk's appeal focuses not only upon the proof of his misconduct, but also upon the punishment he received. Delk made a timely assignment of error that the punishment he received "exceeds or parallels the punishment given in cases" where the attorneys' misconduct was more egregious. I write separately because I am concerned that the punishment imposed by the Disciplinary Board is out of line with the punishments imposed in other similar cases of attorney misconduct.

Delk's license was suspended for three years. In his brief, he refers to thirteen disciplinary cases, all concerning violations of Disciplinary Rule 9-102. These cases are not discussed by the majority. He points out that because of the requirements of confidentiality, he was unable to determine the number of disciplinary cases in which a violation of DR 9-102 resulted in a private reprimand. According to Delk, of the thirteen cases for which information was available, five resulted in a public reprimand, six resulted in a suspension of six months, one resulted in a suspension of two years, one resulted in a suspension of three years, and one resulted in revocation. Delk points out that in the cases involving the three-year suspension and the revocation, the attorneys had been convicted of crimes.

The information Delk has brought to the Court's attention suggests a need for the Disciplinary Board to be attentive to the punishment meted out in similar cases as it decides the appropriate punishment in an individual case. The majority upholds the three-year suspension because of the facts of the instant case and because the sentence is within the limits that the Board is authorized to impose. Yet a comparison of the facts of this case with those of the disciplinary cases cited by Delk indicates that facts such as

these have not been sufficient to support a penalty such as the one imposed here. If this last point has merit, then to say that Delk's sentence is within the limits permitted by law simply ignores a deeper problem of how the law has been applied.

Cases of attorney misconduct are " 'special proceedings, peculiar to themselves, sui generis, disciplinary in nature, and of a summary character.' " *Maddy* v. *District Committee*, 205 Va. 652, 658, 139 S.E.2d 56, 60 (1964) (citations omitted). In *Maddy*, we explained further that disciplinary proceedings were not law suits between parties, but were inquiries or inquests into the conduct of attorneys. The Virginia State Bar is an arm of the Court. The disciplinary structure operated by the State Bar is meant to aid the Court in complying with its basic duty to preserve the integrity of the profession. Consequently, in disciplinary cases, our review is different in kind than in a normal appeal. *Cf. Blue* v. *Seventh District Committee*, 220 Va. 1056, 265 S.E.2d 753 (1980). In cases such as this, we must be concerned not only with the proper disposition of the individual case; we must also be concerned with what is best for the overall disciplinary system.

In the instant appeal, I perceive a problem that may affect the entire system. I am unable to discern from this record whether the Disciplinary Board has taken any precautions to insure that the punishment of attorneys does not vary, without justification, from district to district, case to case, male attorney to female attorney, black attorney to white attorney. To protect against the foregoing, I would institute certain changes in the way in which punishment is decided upon.

I am not able, on this review, to determine what punishment would be appropriate. I am able to say, however, that Delk has raised serious questions concerning the appropriateness of a three-year suspension. I would remand the case to the Disciplinary Board with directions for it to collect information on the facts and punishment in all cases involving violations of DR 9-102, including cases in which private reprimands were given. I would further direct the Disciplinary Board to reconsider Delk's case and to impose a punishment which takes into consideration Delk's misconduct in the instant case, any prior disciplinary proceedings involving Delk, and the punishment given other attorneys charged with similar violations.

In my view, a process such as the one I have suggested would help the Disciplinary Board to better judge the cases that come

before it. It would also tend to make the administration of the disciplinary system more uniform.