# ROBERT E. WRIGHT

## V.

# VIRGINIA STATE BAR

Record No. 860163

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

492

*Robert E. Wright* for appellant.

*Peter R. Messitt, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William L. Thurston, Assistant Attorney General*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

Robert E. Wright appeals from an order entered by the State Bar Disciplinary Board (the Board) revoking his license to practice law. The Board found that he had violated numerous Disciplinary Rules of the Virginia Code of Professional Responsibility.[1] Wright contends that (1) he was denied his rights to due process and equal protection guaranteed by the Federal and Virginia constitutions, (2) the evidence does not support the Board's findings and conclusions, and (3) the sanction of revocation imposed by the Board is excessive, arbitrary, and capricious.

## I
### *The Board's Findings*

Three separate cases were certified to the Board by the Tenth District Committee.[2] On December 19, 1985, the Board heard evidence pertaining to these cases and made the following findings of fact and conclusions of law:

(1) *Case No. 85-29*
Between October 1983 and December 1984, Wright failed to maintain accurately the books and records required for a trust account by the Code of Professional Responsibility. Consequently, he remained uninformed of the amount of money he held in trust, both in the aggregate and for specific individual clients. Debits and credits on individual clients' accounts did not reconcile, and in several instances, checks drawn on the escrow account were written to Wright for fees, but did not appear on the client's ledger card. In other instances, deposits of client funds were not recorded on the client ledger cards. No overall cash receipts or cash disbursements journal was maintained by Wright.

Between October 1983 and December 1984, Wright routinely advanced funds for clients from his trust account without having

---

[1] The text of the relevant Disciplinary Rules is set forth in the Appendix hereto.

[2] A fourth case certified by the District Committee was dismissed by the Board.

received any funds from those clients. Thus, he used the trust funds of one client for the benefit of others.

Between October 1983 and December 1984, Wright routinely permitted his fees to remain in his trust account. He failed to record such amounts on his trust account records and thereby commingled his own funds with those of his clients.

Wright had been placed under the supervision of the Tenth District Committee in June of 1983 because of similar violations. However, he continued to fail to bring his accounts into compliance with the Code after a detailed explanation to him of the record-keeping requirements.

From these findings, the Board concluded that Wright was guilty of misconduct in violation of Disciplinary Rules 9-102(B)(3), 9-103(A)(3), and 9-103(B)(4), (5)(a) and (b) of the Code of Professional Responsibility.

(2) *Case No. 86-14*

Wright represented L & J Refuse Service, Inc. (L & J), in connection with a judgment of $2,773.78 that was entered against it in the General District Court of Fairfax County in favor of Wilbar Truck Equipment, Inc. (Wilbar). Prior to Wright's involvement in this case, judgment had been obtained against L & J on July 19, 1984. A show cause summons was issued returnable February 28, 1985, for L & J's failure to appear to answer debtor's interrogatories. The show cause summons was dismissed based on an agreement between Wilbar's counsel and Wright. As recited in a letter dated April 29, 1985, from Wilbar's attorney to Wright, a payment schedule was agreed upon between Wright and counsel for Wilbar.

Wright forwarded the first installment on the payment plan by a $300 check dated April 20, 1985, written on his operating or "attorney" account at Guaranty Bank and Trust Company (Guaranty Bank). Wilbar's counsel deposited the check in his account, and the check was returned by Guaranty Bank for insufficient funds.

The bank records relating to Wright's attorney account at Guaranty Bank show that from March 25 through April 19, 1985, there were a number of overdrafts in the account and that as of April 19, 1985, the balance in the account was -$84.19. At no time between March 26, 1985, and June 19, 1985, did the account contain as much as $300.

Wright testified that he reconciled his attorney account sporadically, but not on a daily or regular basis. He admitted that he had not received any funds from L & J and had no idea how much money was in his account when he wrote the check. Wright also testified that while he did not believe his account contained sufficient funds when he sent the $300 check to Wilbar's attorney, he thought he would be receiving funds to cover the check.

Wright received two checks from L & J some time after the payment was made from his account to Wilbar's counsel. One check in the amount of $300 represented the Wilbar payment; the second check in the amount of $150 was for the payment of Wright's fees. Wright suspected that the L & J checks were worthless, but promptly cashed them at Dominion National Bank and used the funds for his personal needs. Both checks were returned for insufficient funds.

The Board concluded as follows: Wright knew or should have known that the check he sent to Wilbar's counsel was "not good." Wright also knew that he should not have used the proceeds of the L & J checks until the checks cleared, but he used the bank's funds for his own purposes before the checks cleared. This conduct violated Disciplinary Rule 1-102(A)(4).

### (3) *Case No. 86-15*

In February 1984, Wright agreed to represent Kevin A. Chance in his claim for personal injuries received in an automobile accident. Chance was treated for his injuries by Doctors Noel and Raiford.

Chance signed a statement authorizing and directing Wright to pay the bill for services rendered by Doctors Noel and Raiford out of the funds obtained from the liquidation of his claim. Dr. Raiford rendered to Wright a written report dated August 30, 1984, and a bill for $1,165.

In October or November of 1984, Chance's claim was settled with Colonial Insurance Company for $4,500. This amount was deposited into Wright's fiduciary account on or about November 13, 1984.

On November 13, 1984, Wright wrote checks on his fiduciary account to Chance for $1,700 and to himself for $1,500. This left a balance of $1,300 in Wright's fiduciary account to which Chance was entitled. No payment was made at that time to Doctors Noel and Raiford.

Subsequent to settlement with Colonial Insurance Company, Wright pursued a "Med-Pay" claim against Chance's insurer Stonewall Insurance Company. On or about May 13, 1985, Wright made a deposit of $1,375 in his fiduciary account, which represented the recovery on the Med-Pay claim. On May 17, 1985, he paid the previous balance of $1,300 to Chance. The ledger card does not show the deposit of $1,375.

Dr. Raiford was not paid until November 15, 1985, after he filed a complaint with the Virginia State Bar. Wright acknowledged that he did not pay Dr. Raiford in a timely manner because his accounts were in a state of disarray and he did not have sufficient funds to make the payment.

The bank records show that, although the balance in Wright's fiduciary account should never have gone below $1,300 for the six months between November 13, 1984, and May 17, 1985, the balance was frequently below that amount in each intervening month as to which evidence was presented, *i.e.*, January, February, March, April and May of 1985.

Based on these findings, the Board concluded that Wright violated Disciplinary Rules 1-102(A)(4)[3], 9-102(B)(3) and (4), 9-103(A) and (B).

II

*The Constitutional Challenge*

Wright contends that the procedure followed by the Board denied him due process and equal protection rights guaranteed by the Federal and Virginia constitutions. First, he claims that he was not given timely notice of the charges of misconduct and an opportunity to file an answer to the charges. The record, however, indicates the contrary.

By letter dated November 7, 1985, and delivered to Wright by certified mail on November 8, 1985, Bar Counsel advised Wright of the alleged misconduct, of Wright's right to file an answer to the charges, and of his right to demand a trial by a three-judge court as provided by Code § 54-74 and the Rules of Court. Moreover, a copy of this letter was mailed to Wright's counsel.

---

[3] The transcript reflects that "[t]he Board finds that the Bar *has not proved* clearly and convincingly that [Wright] violated DR 1-102(A)(3) or (A)(4) that has to do with crime or fraud and deceit." (Emphasis added.) The final order, however, recites that the Board found Wright to have violated DR 1-102(A)(4). Wright makes no point of this discrepancy, and we decide the case on the basis of the Board's order.

■ Neither Wright nor his counsel responded to the letter. Although Part 6, § IV, Para. 13(C)(5)(a) of the Rules of Court provides that Wright could object to further proceedings before the Board and demand trial by a three-judge court, Wright made no such objection and demand. Wright's failure to make a timely demand for a three-judge court constituted "a conclusive waiver of the right to subsequently file such demand." Part 6, § IV, Para. 13(C)(5)(b)(v) of the Rules of Court. Thus, Wright cannot now be heard to complain that he was not afforded the right to trial by a three-judge court.

Wright also contends that the hearing afforded him by the Board was unfair because the Board made no distinction between judicial and prosecutorial functions. We do not agree.

■ In hearing the case, making its findings of fact and conclusions of law, and determining the appropriate sanction, the Board exercised only its judicial functions. Bar Counsel exercised the prosecutorial function pursuant to Part 6, § IV, Para. 13(C)(5)(c), which provides that "[i]n all hearings before the Board, Bar Counsel shall appear and represent the Commonwealth and its citizens." If the Board requires legal advice, it "shall be rendered by the Office of the Attorney General." *Id.* The record shows that Bar Counsel performed the duty imposed upon him by law and never served as counsel to the Board. Further, Wright's assertion that the Board Chairman acted improperly is not supported by the record.

■ Wright also claims that he was a victim of double jeopardy and multiplicity of charges. Specifically, Wright contends that the Board improperly considered as part of the Bar's case in chief prior disciplinary actions in which he received private reprimands. The record shows that the Board merely considered the nature of the prior cases in determining the appropriate sanction for the three cases involved in this appeal.

We conclude that the Board properly took into consideration prior incidents of misconduct because such actions by Wright show that, despite earlier reprimands, he persisted in conduct "not commensurate with the competence and skill" required of a lawyer. Indeed, had the Board ignored Wright's past conduct, it would have been derelict in its duty to the public and to the profession. *See Tucker* v. *Virginia State Bar*, 233 Va. 526, 532-33, 357 S.E.2d 525, 528 (1987) (this day decided).

We have reviewed Wright's other due process complaints and find them meritless. We also find no merit to Wright's equal protection claim.

## III
### *Sufficiency of the Evidence*

The burden is on the Bar to establish violation of disciplinary rules by "clear proof." *Blue* v. *Seventh District Committee*, 220 Va. 1056, 1062, 265 S.E.2d 753, 757 (1980). In an appeal from the Board, we will "make an independent examination of the whole record, giving the factual findings of the Disciplinary Board substantial weight and viewing them as prima facie correct." *Id.* at 1061-62, 265 S.E.2d at 757. The conclusions of the Board will be sustained, however, "unless it appears they are not justified by a reasonable view of the evidence or are contrary to law." *Id.* at 1062, 265 S.E.2d at 757.

Wright contends that the Board's findings regarding his violations of the record-keeping rules are not supported by clear proof or, alternatively, "[n]o client had been hurt in any way." Our independent examination of the record reveals that overwhelming evidence supports the Board's factual findings and conclusions that Wright was in violation of Disciplinary Rules 9-102(B)(3) and (4), and 9-103(A) and (B).

Wright kept no complete records identifying the source of funds deposited into his trust account. His clients' ledger cards for the period September 1983 to December 1984 showed total receipts of $7,535.82 deposited in his trust account and disbursements of $13,158.14 from the account. At the time of the Board's hearing on December 19, 1985, Wright still had not brought his ledger cards up to date. Wright overdrew his trust account three times between October 1983 and June 1984. On numerous occasions during the period November 1984 to May 1985 when the fiduciary account should have contained at least $1,300 of Chance's funds, the account balance was less than that amount. In fact, the records show that the trust account had a negative balance in January and May 1985.

Despite the deficiencies in Wright's record-keeping, which he admitted resulted from his own negligence, no client suffered a loss of money. However, neither loss of money by a client nor proof of a lawyer's moral turpitude is a prerequisite to a finding that the lawyer has mismanaged his financial records and clients'

funds. *Delk* v. *Virginia State Bar*, 233 Va. 187, 191-92, 355 S.E.2d 558, 561 (1987). We conclude that clear proof supports the Board's findings that Wright violated Disciplinary Rules 9-102(B)(3) and (4), and 9-103(A) and (B).

■ Wright further contends that there was no clear proof of his "dishonesty, fraud, deceit, or misrepresentation" in violation of Disciplinary Rule 1-102(A)(4). Assuming without deciding that scienter is a necessary element in establishing a violation under this rule, *see Pickus* v. *Virginia State Bar*, 232 Va. 5, 9, 348 S.E.2d 202, 205 (1986); *Gibbs* v. *Virginia State Bar*, 232 Va. 39, 41, 348 S.E.2d 209, 210 (1986), our independent examination of the record shows that Wright, by his own admission, knew that his attorney account did not contain sufficient funds to cover the check to Wilbar's counsel. He also knew he had received the funds to pay Dr. Raiford, but knowingly withheld the sums due the doctor.

## IV
### *The Sanction*

Wright contends that revoking his license to practice law is a sanction that is too severe, arbitrary, and capricious. In reviewing the sanction imposed by a Board, we must consider whether the sanction is within the limits prescribed by the rules and whether the Board properly exercised its discretion. *Matthews* v. *Virginia State Bar*, 231 Va. 308, 311, 343 S.E.2d 79, 80 (1986); *Blue*, 220 Va. at 1062, 265 S.E.2d at 757.

■ In stating its reason for revocation, the Board noted that Wright previously had been given two private reprimands. The Tenth District Committee had endeavored to assist Wright with his record keeping. The Board noted, however, that "[n]othwithstanding the committee's assistance and indulgence Mr. Wright still refuses or is unable to comply with the Disciplinary Rules regarding the handling of client's funds." In concluding that revocation was the only appropriate sanction, the Board stated the following:

> While we do not find that Mr. Wright has intentionally invaded his trust account or intended to cause any client to lose monies we find that his conduct is not commensurate with the competence and skill required of one who is repeatedly entrusted with the funds of others. All of the foregoing

suggests a pattern of conduct by Mr. Wright demonstrative of an inability to comply, or disinterest in conduct required by the Code of Professional Responsibility. Mr. Wright has practiced law for many years. He has not availed himself of opportunities to rehabilitate himself. We do not believe that he is likely to avail himself of other opportunities to rehabilitate himself by any intermediate sanction. The Board believes that the only sanction appropriate to this case is revocation.

The sanction is within the limits prescribed by the Rules, and, after reviewing the entire record, we cannot say that the Board abused its discretion or acted arbitrarily in revoking Wright's license.

For the reasons stated, we will affirm the order of the Board.

*Affirmed.*

## APPENDIX

*DR 1-102. Misconduct.* — (A) A lawyer shall not:

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law.

*DR 9-102. Preserving Identity of Funds and Property of a Client.* —

. . . .

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client or another as requested by such person the funds, securities, or other properties in the possession of the lawyer which such person is entitled to receive.

*DR 9-103. Record-Keeping Requirements.* — (A) Required Books and Records: As a minimum requirement every attorney engaged in the private practice of law in Virginia, hereinafter called "attorney," shall maintain or cause to be maintained, on a current basis, books and records which establish his compliance with Disciplinary Rule 9-102. These records including all the reconciliations and supporting records required under Section (B) hereof shall be preserved for at least five years following completion of the fiduciary obligation and accounting period. For this purpose, the following books and records, or their equivalent, are required.

(1) A cash receipts journal or journals listing all funds received, the sources of the receipts and the date of receipts. Check book entries of receipts and deposits, if adequately detailed and bound, may constitute a journal for this purpose. If separate cash receipts journals are not maintained for fiduciary and nonfiduciary funds, then the consolidated cash receipts journal shall contain separate columns for fiduciary and nonfiduciary receipts.

(2) A cash disbursements journal listing and identifying all disbursements from the fiduciary account. Check book entries of disbursements, if adequately detailed and bound, may constitute a journal for this purpose. If separate disbursements journals are

not maintained for fiduciary and nonfiduciary disbursements then the consolidated disbursements journal shall contain separate columns for fiduciary and nonfiduciary disbursements.

(3) Subsidiary ledger: A subsidiary ledger containing a separate account for each client and for every other person or entity from whom money has been received in trust shall be maintained. The ledger account shall by separate columns or otherwise clearly identify fiduciary funds disbursed, and fiduciary funds balance on hand. The ledger account for a client or a separate subsidiary ledger account for a client shall clearly indicate all fees paid from trust accounts.

(4) Computerized and marketed manual accounting systems: Where an attorney or firm of attorneys maintains computerized records or a manual accounting system, such system must produce the records and information required by this rule.

(B) Required Trust Accounting Procedures: The following minimum trust accounting procedures are applicable to all trust accounts maintained by attorneys practicing in Virginia.

(1) Insufficient fund check reporting: Every attorney practicing in this state shall file with each banking institution wherein he maintains a trust account in the practice of law a directive to the drawee bank as follows: Such bank shall report to the Executive Director, Virginia State Bar, when any check drawn on such trust account is returned for insufficient funds, unless the attorney and bank are able to resolve the matter within three banking days. No trust account shall be maintained in any bank which does not agree to make such reports pursuant to such directive.

(2) Deposits: All receipts of trust money shall be deposited intact and a retained duplicate deposit slip or other such record shall be sufficiently detailed to show the identity of each item.

(3) Deposit of mixed fiduciary and nonfiduciary funds other than fees and retainers: Mixed fiduciary and nonfiduciary funds shall be deposited intact to the trust account. The nonfiduciary portion shall be withdrawn upon the clearing of the mixed fund deposit instrument.

(4) Periodic Trial Balance: A regular periodic trial balance of the subsidiary ledger shall be made at least quarter annually, within 30 days after the close of the period and shall show the trust account balance of the client or other person at the end of each period.

(a) The total of the trial balance must agree with the control figure computed by taking the beginning balance, adding the total of monies received in trust for the period and deducting the total of trust monies disbursed for the period.

(b) The trial balance shall identify the preparer and be approved by the attorney or one of the attorneys in the firm.

(5) Reconciliations:

(a) A monthly reconciliation shall be made at month end of the cash balance derived from the cash receipts journal and cash disbursements journal total, the trust account check book balance, and the trust account bank statement balance.

(b) A periodic reconciliation shall be made at least quarter annually, within 30 days after the close of the period, reconciling cash balances to the subsidiary ledger trial balance.

(c) Reconciliations shall identify the preparer and be approved by the attorney or one of the attorneys in the firm.

(6) Receipts and Disbursements Explained: The purpose of all receipts and disbursements of trust funds reported in the trust journals and subsidiary ledgers shall be fully explained and supported by adequate records.

THOMAS, J., concurring in part and dissenting in part.

I have no problem with the portions of the majority opinion which uphold the violations found by the Disciplinary Board in Cases 85-29 and 86-14. However, there is a conflict in Case No. 86-15 between the Disciplinary Board's oral statement of its findings and what is contained in the final written order concerning that case. The discrepancy in Case No. 86-15 undermines my confidence in the Board's decision to revoke Wright's license to practice law in the Commonwealth.

After hearing evidence in all of the cases of misconduct charged against Wright, the chairman of the panel announced as follows: "The Board has considered the evidence in all these cases and [is] prepared to announce its findings. And what I propose to do is tell you what we found in each of the cases in the order that they were presented." Then, with regard to Case No. 86-15, the chairman stated as follows:

> Finally, 86-15, the Board finds this was the case where he failed to pay the Dr. Raiford in a timely manner.
> The Board finds that the Bar *has not proved clearly and convincingly that he violated DR 1-102(A)(3) or (A)(4)* that has to do with crime or fraud and deceit, but that the Bar has proved clearly and convincingly he's in violation of sections — Rule 9-10 — 9-102(B)(3), (B)(4) and *not 9-103(A) and (B)*, all of which relate to accurate recordkeeping and also requiring him to deliver to the person entitled to receive funds the money they were entitled to receive in a timely manner.

(Emphasis added.)

Although the chairman announced that the Bar had not proved by clear and convincing evidence a violation of DR 1-102(A)(3) or (A)(4), and DR 9-103(A) and (B), the written order in Case No. 86-15 states that Wright violated DR 1-102(A)(4), DR 9-103(A), and DR 9-103(B). Admittedly, Wright did not raise the foregoing discrepancy in his arguments to this Court. However, in my opinion, Wright's failure to point out the conflict between the oral findings and the written order does not relieve this Court of its overriding responsibility to ensure that the disciplinary system functions fairly. We stated in *Blue* v. *Seventh District Committee,*

220 Va. 1056, 265 S.E.2d 753 (1980), that in disciplinary cases this Court makes an independent review of the entire record to determine whether the findings of the Board are supported by the evidence. That independent review in this case reveals the conflict between the Board's announced findings and its written order.

The Board revoked Wright's license on the basis of the combined effect of the misconduct in the three separate cases. In one of those cases, however, as demonstrated here, there exists doubt as to the correctness of the Board's written statement of violations. I would not permit the revocation of an attorney's license to practice law while such an important discrepancy remains unexplained. Thus, on this record, I would vacate the order of revocation and remand the case for reconsideration of the sanction in light of the discrepancy that exists in Case No. 86-15.