# James F. Gay

## v.

## Virginia State Bar, ex rel. Second District Committee

Record No. 890912

March 2, 1990

Present: All the Justices

*Philip S. Marstiller (Edward R. Parker; Dawn B. DeBoer; Parker, Pollard & Brown,* on briefs), for appellant.

*Gregory E. Lucyk, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal of right from a ruling of the Virginia State Bar Disciplinary Board (the Board), James F. Gay challenges the Board's decision to suspend his license to practice law in the Commonwealth for a period of three years. The Board based the suspension on its finding that Gay had violated Disciplinary Rules 1-102(A)(4),[1] 6-101(B) and 6-101(C),[2] and 9-102(B)(3) and 9-102(B)(4).[3]

In June of 1983, Gay was retained by Mary Lou Williams to recover insurance proceeds for the benefit of Williams' granddaughter, a minor. Gay did so successfully, and Williams requested Gay to invest the net proceeds of $29,099.64. On September 14, 1983, Gay deposited $27,000.00 into an interest-bearing trust account at Dominion Federal Savings and Loan Association, labeled "Money Market Checking, James F. Gay, Trustee for Mary Williams" (the trust account). He left approximately $2,100 in his escrow account. Gay disbursed $6,784.16 of the proceeds to Williams, leaving a balance of $20,746.39 in the trust account.

On February 1, 1984, Gay disbursed $2,000 from the trust account to Aqua Dynamics, Ltd., a business owned by Gay's family. On February 22, and April 2, 1984, Gay made separate disbursements of $4,500 and $8,000 from the trust account for the benefit of H & L Contractors, Inc. (H&L), a small construction firm

---

[1] *DR 1-102. Misconduct.*—(A) A lawyer shall not:

. . . .

(4)   Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law.

[2] *DR 6-101. Competence and Promptness.*

. . . .

(B)   A lawyer shall attend promptly to matters undertaken for a client until completed or until the lawyer has properly and completely withdrawn from representing the client.

(C)   A lawyer shall keep a client reasonably informed about matters in which the lawyer's services are being rendered.

[3] *DR 9-102. Preserving Identity of Funds and Property of a Client.*

. . . .

(B)   A lawyer shall:

. . . .

(3)   Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4)   Promptly pay or deliver to the client or another as requested by such person the funds, securities or other properties in the possession of the lawyer which such person is entitled to receive.

which was also Gay's client. Gay did not inform Williams of the loans to Aqua Dynamics and H&L. He also failed to create any accounting device to memorialize the loans.

In June 1984, at Williams' request, Gay prepared a handwritten accounting of the trust assets. The accounting was misleading in several respects: it did not reveal any disbursements to Aqua Dynamics or to H&L; it failed to show any interest earned on the trust account; and it listed stock investments of $10,815 when in actuality no stock had been purchased.

On August 7, 1985, Gay made a note for $26,000, payable to himself as trustee of the trust account, which was signed by H&L officers. Gay testified that the note's purpose was to provide H&L with a line of credit, and that he had secured the debt by obtaining deeds of trust on the homes of H&L's principals. He also claimed to have obtained a "consent to pledge" on certain H&L equipment. However, the deeds of trust were never notarized, rendering them unrecordable, and Gay never filed financing statements, thereby failing to perfect a security interest against the H&L equipment.

From September to December of 1985, Gay disbursed another $5,800 from the trust account for the benefit of H&L. These disbursements reduced the trust account's balance to $104.52 at the end of 1985. Gay provided Williams with no accounting for 1985.

In February of 1986, Williams employed attorney A. J. Kalfus to ascertain the status of the trust account. After Kalfus mailed Gay three letters, all demanding an accounting, Gay provided Kalfus with typewritten documents labeled as accountings for 1983, 1984, 1985, and 1986. Each accounting was deficient. None identified the disbursements to Gay as loans to H&L, and the loan to Aqua Dynamics did not appear at all on the 1984 accounting. The 1985 accounting overstated the amount "invested in" H&L by $835 and overstated the year-end balance. The 1986 accounting overstated the opening balance and failed to account for a $10,000 deposit to the trust account, apparently made in partial payment of the H&L debt.

On June 10, 1986, Kalfus, acting on Williams' authorization, directed Gay to turn over the trust assets and records. Gay did not respond. On August 26, 1986, Gay disbursed another $6,000 from the trust account for the benefit of H&L. Gay later deposited $6,000 to the trust account, presumably to retire part of the H&L debt.

In September 1986, Williams filed a complaint against Gay with the Virginia State Bar. The day before the hearing date, Gay delivered a check to Kalfus for $25,770.96, representing what Gay claimed to be the balance due Williams.

After a hearing, the Second District Committee certified charges of Gay's misconduct to the Board. The Board, following hearings on February 17, and March 17, 1989, suspended Gay's license for three years. This Court stayed the suspension pending the outcome of this appeal.

On appeal, Gay seeks reversal of the Board's actions on three grounds. First, he contends that he was not acting as an attorney while investing funds for Williams and, therefore, the Board could not properly sanction him under the Disciplinary Rules. Second, he maintains that wrongful intent was not shown, and finally, he challenges the penalty as fundamentally unfair, arbitrary, and capricious.

I.

We will first address the application of the Disciplinary Rules to Gay's case. Gay claims that his decisions in regard to the trust account did not involve the application of legal principles, nor did he prepare any legal instruments concerning the trust account. Thus, under the definition contained in Part 6, Section I(B) of the Rules of the Virginia Supreme Court, he contends he was not practicing law and therefore was not subject to the penalties set forth in the Disciplinary Rules, Part 6, § IV, Para. 13 C(6)(c). We disagree, and hold that the Disciplinary Rules were applicable to Gay's actions.

"Generally, the relation of attorney and client exists, and one is deemed to be practicing law whenever he furnishes to another advice or service under circumstances which apply his possession and use of legal knowledge or skill." Rules, Part 6, § I B. Clearly, an attorney-client relationship was established between Gay and Williams. There is no evidence that the relationship was interrupted or extinguished until 1986. Furthermore, Gay prepared legal instruments such as deeds of trust and a consent to pledge personalty in order to protect the funds in the trust account. Such actions involved the "use of legal knowledge or skill" under the Rules. *See Gibbs* v. *Virginia State Bar*, 232 Va. 39, 348 S.E.2d 209 (1986).

■ Gay, an attorney actively engaged in the practice of law, mismanaged his client's funds, and is subject to the Disciplinary Rules of his profession.

## II.

Gay contends that, even if the Disciplinary Rules apply to his actions, the Board erred in finding him in violation of DR 1-102(A)(4) because he did not possess the wrongful intent to deprive Williams of any of her funds. We disagree.

■ We have assumed, without deciding, that scienter is a necessary element to establish a case of misrepresentation under DR 1-102(A)(4).[4] *Pickus* v. *Virginia State Bar*, 232 Va. 5, 9, 348 S.E.2d 202, 205 (1986); *Gibbs*, 232 Va. at 41, 348 S.E.2d at 210. The Bar has the burden to show such wrongful intent by "clear proof." *Blue* v. *Seventh District Committee*, 220 Va. 1056, 1062, 265 S.E.2d 753, 757 (1980). We hold that the Bar established by "clear proof" that Gay violated DR 1-102(A)(4).

In response to Williams' initial request to know the status of her investment, Gay did not inform her that he had loaned over $14,500 from the trust account to two different businesses, one owned by his family. Instead, he falsely represented that he had invested $10,825 in stocks. Further, when Gay submitted individual accountings for the years 1983 through 1986, he did not itemize or explain the disbursements made to himself for the benefit of H&L.

■ Gay made these representations with knowledge of their falsity. As we have stated before, it is an attorney's knowing and intentional misrepresentation, not a wrongful intent to defraud his client, which satisfies the scienter requirement of DR 1-102(A)(4). *Pickus*, 232 Va. at 9, 348 S.E.2d at 205; *Gibbs*, 232 Va. at 41-42, 348 S.E.2d at 210.

---

[4] We assume that Gay asserts his lack of wrongful intent only as a defense to the Board's finding that he violated DR 1-102(A)(4). We are aware of no scienter requirement for a finding that an attorney has violated DR 6-101(B) (failing to attend promptly to matter undertaken for a client) or DR 6-101(C) (failing to keep a client reasonably informed). Also, we have held that wrongful intent is not required to find an attorney in violation of DR 9-102(B)(3) and 9-102(B)(4) (failing to render appropriate accounts to a client, and failing to deliver promptly a client's funds upon request). *Delk* v. *Virginia State Bar*, 233 Va. 187, 192, 355 S.E.2d 558, 561 (1987).

## III.

Next, Gay contends that the suspension of his license for three years was fundamentally unfair, arbitrary, and capricious in light of less severe penalties issued in other cases, and inappropriate because his client ultimately did not suffer any monetary loss. On appeal, the penalty imposed by the Board will be viewed as *prima facie* correct and will not be disturbed unless we determine, upon independent review of the record, that the penalty was not justified by the evidence or was contrary to law. *Tucker* v. *Virginia State Bar*, 233 Va. 526, 534, 357 S.E.2d 525, 529 (1987); *Blue*, 220 Va. at 1061-62, 265 S.E.2d at 757.

First, Gay asserts his actions did not exhibit a pattern of unprofessional conduct which he maintains should exist to impose a penalty as severe as the one imposed in this case. In support of his position, he cites cases in which we have upheld penalties of revocation and three-year suspension based on a finding that an attorney was guilty of repeated misconduct. *Tucker*, 233 Va. at 526, 357 S.E.2d at 525; *Wright* v. *Virginia State Bar*, 233 Va. 491, 357 S.E.2d 518, *cert. denied*, 484 U.S. 930 (1987); *Delk* v. *Virginia State Bar*, 233 Va. 187, 355 S.E.2d 558 (1987).

We have never held that a "pattern of misconduct" must exist before a three-year suspension may be imposed. Although the Board correctly may consider such a pattern in arriving at the appropriate disciplinary measure, *Tucker*, 233 Va. at 533, 357 S.E.2d at 529, it has the discretion to issue a suspension of up to five years for any finding of misconduct. Rules, Part 6, § IV, Para. 13 C(6).

In any event, the Board found in its "Order and Opinion" that Gay engaged in "a continuing course of dealing with Mrs. Williams' funds in a manner calculated to avoid or delay the day when Mr. Gay would be called upon to satisfy an acknowledged personal liability if H&L were unable to pay its obligations."

Secondly, Gay contends that, because Williams suffered no monetary loss, his suspension was unreasonably harsh. However, we have clearly stated that a client's loss of funds is not a prerequisite for an attorney's suspension due to a mishandling of funds. *Delk*, 233 Va. at 191, 355 S.E.2d at 561. It is enough that Gay knew or should have known he was misusing his client's funds. *Id.* at 192, 355 S.E.2d at 561.

Finally, Gay challenges the severity of the penalty in light of lesser punishments handed down for what he believes to be more

egregious conduct than his own,[5] and he urges us to require uniformity in sanctions based upon existing case law. We refuse to adopt such a requirement.

■ Upon any finding of misconduct, the Board has broad discretion to impose any of the following penalties: (a) a private reprimand; (b) a public reprimand; (c) suspension of the attorney's license for a maximum of five years; (d) revocation of the attorney's license. Rules, Part 6, § IV, Para. 13 C(6). Each case before the Board presents a unique set of facts. As we said in *Maddy* v. *First District Committee*:

> In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession.

205 Va. 652, 658, 139 S.E.2d 56, 60 (1964). *See also Gibbs*, 232 Va. at 42, 348 S.E.2d at 211; *Pickus*, 232 Va. at 15, 348 S.E.2d at 208-09.

The record reflects that the Board gave "thoughtful attention" to the sanction to be imposed. The Board considered six aggravating factors and four mitigating factors, and agreed on a punishment within the limits of its discretion.[6] Rules, Part 6, § IV, Para. 13 C(6)(c). Gay's counsel has pointed us to no evidence that the Board abused its discretion.

Accordingly, we will affirm the Board's order suspending for three years Gay's license to practice law in this Commonwealth. Because Gay's suspension had been stayed during the pendency of this appeal, the suspension will begin on April 30, 1990. Gay shall notify, by certified mail, all clients for whom he is currently handling matters and all opposing attorneys and presiding judges in litigation. Gay shall make appropriate arrangements for the dispo-

---

[5] Gay cites numerous cases to support this argument, some in which he maintains that, unlike his case, willful or fraudulent misconduct existed. We need not consider them in light of our holding.

[6] In the appendix to this opinion, we set forth the aggravating and mitigating factors the Board considered as set forth on pages 13 and 14 of the Board's "Order and Opinion."

sition of these matters presently in his care, in conformity with the wishes of his clients.

*Affirmed.*

*o*

## APPENDIX

### Excerpts from Board's Order and Opinion
### of April 26, 1989

The American Bar Association's standards for Imposing Lawyer Sanctions are instructive. Under Paragraph III C, Section 4.1, suspension is appropriate "when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. *Standards for Imposing Lawyer Sanctions*, American Bar Association, 1986, p.9. Paragraph III C, Sections 9.2 and 9.3 of the *Standards* list aggravating and mitigating factors which may be considered in imposing sanctions. With reference to these lists, the Board finds the following aggravating factors to be present in this case:

1. the existence of a prior disciplinary offense;
2. a selfish motive in that Mr. Gay attempted to protect himself against financial loss by continuing to advance Mrs. Williams' funds to H&L;
3. a pattern of misconduct evidenced by Mr. Gay's repeated unauthorized disbursement of Mrs. Williams' funds and his failure over a long period to account properly to Mrs. Williams;
4. vulnerability of Mrs. Williams, a person whom Mr. Gay acknowledges was of doubtful capacity to evaluate investment strategies;
5. substantial experience in the practice of law evidenced by Mr. Gay's fulltime engagement in private practice since 1977;

6. indifference to making restitution, evidenced by Mr. Gay's failure for many months to turn over Mrs. Williams' assets as directed.

The following mitigating factors are present:

a. personal emotional problems relating to the death of Mr. Gay's brother in early 1987 following the loss of his mother a year or so before;
b. a record of good character and reputation in the community;
c. interim rehabilitation demonstrated by Mr. Gay's testimony that he has improved his recordkeeping and office procedures;
d. remorse, evidenced by Mr. Gay's recognition that the manner in which he handled Mrs. Williams' affairs was inappropriate.

Considering the entire record of these proceedings, the seriousness of Mr. Gay's offenses, the substantial financial jeopardy in which Mrs. Williams was placed during the course of Mr. Gay's dealings and the presence of both aggravating and mitigating factors, the Board determines and hereby ORDERS that the license of James F. Gay to practice law in the Commonwealth of Virginia be SUSPENDED for a period of three (3) years, effective thirty (30) days from the entry of this Order.

JUSTICE HASSELL, concurring in part and dissenting in part.

I agree with the majority that the Disciplinary Board did not err in finding that James Gay violated Disciplinary Rules 1-102(A)(4), 6-101(B), 6-101(C), 9-102(B)(3) and 9-102(B)(4). I dissent, however, because I am concerned that Gay's punishment appears to be greater than punishments imposed upon attorneys who committed disciplinary violations similar to or more egregious than the violations committed by Gay.

Gay's license was suspended for three years. I am unable to discern from the record why Gay received this harsh punishment. I do not agree with the Disciplinary Board that it is sufficient to respond to this issue by merely stating that the punishment imposed upon Gay falls within the range of permissible punishments which may be imposed. This response does not explain the disparity in punishments. Rather, I agree with the concerns which Justice Thomas raised in *Delk* v. *Virginia State Bar*, 233 Va. 187, 195, 355 S.E.2d 558, 563 (1987) (Thomas, J., concurring in part and dissenting in part):

> In the instant appeal, I perceive a problem that may affect the entire system. I am unable to discern from this record whether the Disciplinary Board has taken any precautions to insure that the punishment of attorneys does not vary, without justification, from district to district, case to case, male attorney to female attorney, black attorney to white attorney. To protect against the foregoing, I would institute certain changes in the way in which punishment is decided upon.

Gay is entitled to know the exact reason that his punishment is more severe than punishments received by lawyers who committed similar or more egregious violations.