## Perry F. Tucker, Jr.

### v.

## Virginia State Bar

Record No. 850920

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

*Gerald G. Poindexter (Toland D. Ealey; Poindexter & Poindexter,* on briefs), for appellant.

*Peter R. Messitt, Assistant Attorney General (Mary Sue Terry, Attorney General; James T. Moore, III, Senior Assistant Attor-*

ney General; Diane Langley, Assistant Attorney General, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this appeal of right by an attorney from an order of disbarment, the central question is whether an excessive sanction was imposed.

The Virginia State Bar Disciplinary Board (the Board), after a hearing on August 15, 1985, found Perry F. Tucker, Jr., a member of the Virginia State Bar, guilty of two violations of the Disciplinary Rules of the Virginia Code of Professional Responsibility. The Board detailed its findings as follows:

*Disciplinary Board Docket No. 85-17:*

A. Ms. Aldonia Carrington first consulted Mr. Tucker on September 29, 1983, regarding a claim for child support. She was quoted a fee of $300 for Mr. Tucker's handling of a petition for child support and paid $200 by October 31, 1983.

B. Ms. Carrington called Mr. Tucker several times during December 1983 and January 1984 regarding the matter, but was unable to reach him because he had closed his office and disconnected his telephone without notification to his clients.

C. On the last occasion on January 30, 1984, she received a recording that the phone was no longer in service.

D. She subsequently filed a complaint with the Virginia State Bar in February 1984.

E. Mr. Tucker had in fact filed the petition for child support in December 1983 prior to the complaint being filed, and obtained a court date of April 4, 1984, for hearing the matter, but had not kept Ms. Carrington informed as to the delays in the court's trial docket or as to the filing of the petition.

F. In the meantime, Ms. Carrington obtained other counsel who assumed the handling of the matter. Mr. Tucker has not returned any portion of the fees paid to him by Ms. Carrington.

It is the opinion of the Board that such conduct by Perry F. Tucker, Jr. is misconduct in violation of Disciplinary Rule

6-101(C) of the Revised Code of Professional Responsibility effective October 1, 1983.

. . . .

*Disciplinary Board Docket No. 85-18*:

A. Alice Braxton retained Perry F. Tucker, Jr. to represent her in a divorce and paid him a retainer of $135 by check dated September 14, 1982. Mr. Tucker prepared a Bill of Complaint on her behalf on November 5, 1982, and mailed a copy to Ms. Braxton but did not file the complaint until August 16, 1983. On August 17, 1983, Ms. Braxton paid Mr. Tucker the balance of his fee.

B. Depositions were scheduled in the divorce for September 24, 1983. Ms. Braxton went to Mr. Tucker's office on that date but Mr. Tucker was not in, the office was locked, and the depositions had to be cancelled. Ms. Braxton filed a complaint with the Virginia State Bar on September 30, 1983.

C. Mr. Tucker was informed of this complaint by letter dated December 6, 1983. On November 11, 1983, he had written to Ms. Braxton regarding the cancelled depositions, as to which he claimed to have confused the dates. However, no depositions were rescheduled until March 1984.

D. The final divorce decree was entered in May of 1984.

E. Ms. Braxton suffered no loss, but the matter was delayed beyond the normal time expected for this type of uncontested divorce. Ms. Braxton stated that on a number of occasions, she had been unable to reach Mr. Tucker by phone or in person, and in January of 1984, he closed his office without notification to his clients.

F. Mr. Tucker neglected to handle this legal matter in a timely fashion and failed to keep his client reasonably informed as to the status of the matter.

It is the opinion of the Board that such conduct by Perry F. Tucker, Jr. is misconduct in violation of Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility effective prior to October 1, 1983, and Disciplinary Rule 6-101(C) of the Revised Code of Professional Responsibility effective October 1, 1983.

At the hearing, Alice Davis Jones, formerly Alice Braxton, testified in support of the complaint she had made to the Bar. Aldonia Carrington, however, did not appear at the hearing. The facts relating to her complaint were primarily elicited from the testimony of Mr. Tucker, who was called as a witness by counsel for the Bar. Mr. Tucker made no objection to this procedure, and the record indicates that his attorney, who was present at the hearing, had agreed to it in advance.

At the conclusion of the evidence, the Board retired to deliberate. It then reconvened the hearing and announced that it had found the violations noted above to have been proved by clear and convincing evidence. The Board found that the Bar had failed to prove the allegations of a complaint by a third client against Mr. Tucker, and dismissed that complaint. The Board then inquired whether Mr. Tucker had ever been subjected to discipline by the Bar on any prior occasion. Mr. Tucker responded that he had been disciplined on three prior occasions: a 45-day suspension of his license in 1982 for the unauthorized alteration of a document "to make it clearer to an insurance adjuster"; a 90-day suspension in 1984 for charging an excessive fee and failing "to pick up a deed of trust in a real estate matter in which there was an alleged conflict of interest"; and a private reprimand in 1984 for failure to return overpaid real estate taxes to a client.

The Board again retired to deliberate, then reconvened and announced its decision to revoke Mr. Tucker's license. The Board based its decision upon the pattern demonstrated by repetitive violations of the disciplinary rules. The final order, entered September 19, 1985, set forth the Board's reasoning as follows:

> The imposition of an appropriate sanction, once misconduct has been proved, is perhaps the most difficult task of the Disciplinary Board.
>
> In the instant cases, it is true that the incidents of misconduct, if taken by themselves, might warrant something less than the sanction we feel obliged to impose.
>
> However, these incidents of misconduct together with the fact that Mr. Tucker's license has on two prior occasions been suspended for similar violations, indicate a pattern that has developed over a considerable period of time. Unfortunately, Mr. Tucker's record in the short time that he has been at the bar indicates that regardless of any technical pro-

ficiency he may possess he is simply not able to competently practice law without causing injury to his clients.

In determining a disciplinary sanction, the Board must consider the public interest as well as the interests of the immediate parties. A suspension of the license to practice law, as has been done with Mr. Tucker previously, allows the respondent to resume the practice of law at the conclusion of the period of suspension. However, a revocation of the license to practice law requires the respondent to demonstrate his competence in an application for reinstatement before he would be able to resume his law practice.

Given Mr. Tucker's repeated misconduct after his prior suspensions expired, the Board feels that the public interest, the interests of the Respondent's clients, and the Respondent's business interest can only be served by an affirmative effort on the Respondent's part to earn once again the right to practice law in this Commonwealth.

Wherefore, it is the judgment of the Board that the license of Perry F. Tucker, Jr. to practice law in the Commonwealth of Virginia be Revoked.

After the Board's final order was entered, Mr. Tucker, represented by different counsel, filed with the Board a "Motion to Vacate Previous Order And To Reconsider." The motion raised three issues: (1) "Unduly harsh punishment, given the nature of the infractions found," (2) lack of due process in that "respondent was subpoenaed as a witness and compelled to, in effect, testify against himself . . . and at the same time, without waiving his right, deprived of his right to confront and/or cross examine complaining witnesses . . ." and (3) the Board acted improperly and arbitrarily in basing its penalty in part on Mr. Tucker's three previous violations of disciplinary rules.

The Board denied the motion by an order entered October 28, 1985, which noted that the Rules of Court which prescribe the Board's procedure contain no provision authorizing reconsideration of its final orders.* Mr. Tucker's appeal raises substantially the same issues as those in his post-hearing motion.

---

* This ruling was correct. Part 6, § IV, Para. 13 C(7), Rules of Court, provides in pertinent part: "Every order of the Board directing public reprimand, suspension, or disbarment shall be final and binding unless an appeal is taken . . . ."

■ The complaint of lack of due process based on alleged self-incrimination and lack of confrontation is without merit. A proceeding to discipline an attorney is civil, not criminal in nature. *Seventh District Committee* v. *Gunter*, 212 Va. 278, 284, 183 S.E.2d 713, 717 (1971). Its purpose is to protect the public and to maintain the integrity of the Bar. *Cummings* v. *Virginia State Bar*, 233 Va. 363, 367, 355 S.E.2d 588, 591 (1987). None of the three complaints made against Mr. Tucker by his clients, which were the subject of the Board's hearings on August 15, 1985, alleged any wrongdoing which would constitute a crime. Therefore, the state and federal constitutional provisions granting protection against self-incrimination and providing the right to confront witnesses were inapplicable.

■ It is true, as Mr. Tucker argues on appeal, that our Rules, Pt. 6, § IV, Para. 13 C(5)(a), provide: "The attorney shall have the right to representation by counsel, to examine and cross-examine witnesses, to present evidence in his own behalf and to avail himself of the powers of the Board with respect to the attendance of witnesses and the production of documents." No contention was made at the hearing that any of these rights were infringed; indeed, as noted above, the procedure adopted by the Board was agreed to by bar counsel and counsel for Mr. Tucker. His objections based on alleged violations of the foregoing rule are raised on appeal for the first time, and will, therefore, not be considered here. Rule 5:25.

■ Mr. Tucker argues that never in the annals of the Virginia State Bar has an attorney been disbarred for a violation amounting only to professional neglect. He does not contend that he was blameless, but argues that the penalty imposed by the Board was disproportionate to the violations which the Board found proved at his hearing. If the premises could be stated that narrowly, we might agree with his conclusion. But the Board was not required to confine its consideration of the appropriate penalty to the offenses proved at the hearing. The Board, properly in our view, bifurcated its hearing so that any evidence of prior disciplinary proceedings against the attorney could be introduced only at the penalty phase, after the Board found that violations of the Disciplinary Rules had occurred. We disagree with Mr. Tucker's contention that consideration of prior discipline at that stage constituted "cumulative punishment," and hold that the Board has both the authority and the responsibility to take into account, in deter-

mining appropriate discipline for any violation of the Rules, matters in aggravation as well as in mitigation of the violations proved.

■ Because a primary purpose of the Disciplinary Rules is the protection of the public, it is clearly the Board's duty, in determining an appropriate penalty, to consider whether the attorney before it has demonstrated a history of professional conduct harmful to his clients or to the public generally. Just as a long period of responsible and ethical professional service preceding an isolated and unintended violation might well be considered in mitigation of a penalty, so may a series of violations culminating in prior disciplinary penalties be considered in aggravation. *See Wright* v. *Virginia State Bar*, 233 Va. 491, 497, 357 S.E.2d 518, 521 (this day decided).

Mr. Tucker contends that the Board erroneously concluded that his earlier violations, in conjunction with those proved at his hearing, demonstrated a "pattern." He points out that his earlier penalties were not imposed for neglect, but for different offenses, resulting in no "pattern" whatever. This argument misconstrues the Board's opinion. The "pattern" found to exist was based not upon uniformity of conduct, but rather upon a propensity to commit various and recurring violations of the Disciplinary Rules harmful to clients and to the public. The "pattern" of professional misconduct mentioned in the Board's final order consisted of five separate and unrelated violations resulting in four disciplinary proceedings within a four-year period.

■ As the Board stated in its final order, the incidents of misconduct proved at the hearing, considered in isolation, might well warrant a lesser penalty. The Board's final conclusion, however, was properly based upon its consideration of the attorney's entire disciplinary history.

Granted that the Board acted properly in considering Mr. Tucker's disciplinary record, the fact remains that the Board imposed a penalty more severe than that which might have been chosen by a number of the members of this Court, had they been in the Board's position. This brings us to a consideration of our proper role when the relative severity of the discipline imposed by the Board is challenged on appeal. Do we sit as successor finders of fact, substituting our judgment for that of the Board? Does the Board's conclusion come to us with a presumption of correctness, placing upon the appellant the burden of rebutting it? Is the

Board's conclusion an exercise of discretion, to be disturbed on appeal only where there is a clear showing of abuse? Should we adopt a "shock-the-conscience" test?

An answer is provided by analogy in *Blue* v. *Seventh District Committee*, 220 Va. 1056, 1061-62, 265 S.E.2d 753, 756-57 (1980), *cert. denied*, 448 U.S. 904 (1980), where we were urged by the appellant attorney to redetermine the facts on appellate review of a proceeding before the Board, and urged by the Bar to accord the Board's findings the same binding effect on appeal as a jury verdict approved by a circuit court. Adopting neither alternative, we held that we will, on review of the Board's proceedings,

> make an independent examination of the whole record, giving the factual findings of the Disciplinary Board substantial weight and viewing them as prima facie correct. While not given the weight of a jury verdict, those conclusions will be sustained unless it appears they are not justified by a reasonable view of the evidence or are contrary to law.

*Id.* at 1061-62, 265 S.E.2d at 757.

The Board's options in the determination of appropriate discipline are wide. Upon finding misconduct proved, the Board may (a) deliver a private reprimand; (b) deliver a public reprimand; (c) suspend the attorney's license for a stated period up to five years; or (d) revoke the attorney's license. Rules, Pt. 6, § IV, Para. 13 C(6). To substitute our personal preferences for the Board's judgment would be entirely inconsistent with the wide grant of discretion made to the Board by the Rules. On the other hand, the exercise of the Board's discretion is not beyond review.

Consistent with our holding in *Blue* with respect to the Board's findings of fact, we now hold that the penalty imposed by the Board in a disciplinary proceeding will be viewed on appeal as *prima facie* correct and will not be disturbed unless, upon our independent examination of the whole record, it appears unjustified by a reasonable view of the evidence or is contrary to law. Applying that standard, we perceive no valid basis for disturbing the Board's ruling in this case.

The order appealed from will be

*Affirmed.*

COCHRAN, R.J., dissenting.

I accept the standard approved by the majority that the penalty imposed by the Board in a disciplinary proceeding is prima facia correct. I further agree that the penalty imposed should not be disturbed unless, upon our independent reading of the record, "it appears unjustified by a reasonable view of the evidence or contrary to law." I disagree, however, with the conclusion of the majority that there is no valid basis for disturbing the penalty.

Acknowledging that many members of this Court might have been unwilling to impose the ultimate sanction in the present case, the majority is unwilling to reverse the ruling of the Board. I share the majority's reluctance to disturb a result that has been reached after careful consideration by a group of high-minded lawyers who seek only to perform the difficult and unpopular task of policing their profession. Nevertheless, the revocation of Tucker's license to practice law, under the facts of this case, shocks my conscience and, in my view, is unjustified.

The record shows that Tucker was dilatory, disorganized, and inefficient. His failure to communicate with his clients was inexcusable. But his conduct, while subject to valid criticism, was not dishonest. In the Carrington matter, Tucker filed the petition for child support within two months after his fee had been paid and two months before the client filed a complaint with the Virginia State Bar. Tucker failed, however, to keep his client informed or to make himself available for information.

In the Braxton matter, Tucker was dilatory and uncommunicative. Nevertheless, after considerable delay and lack of communication between lawyer and client, Tucker had a final divorce decree entered in accordance with his employment agreement. The Board reported that the client "suffered no loss, but the matter was delayed beyond the normal time expected for this type of uncontested divorce."

The Board acknowledged in its final order that the two cases "if taken by themselves, might warrant something less than the sanction" imposed. But the Board took into consideration three earlier instances where Tucker had been disciplined. In 1982, his license had been suspended for 45 days for unauthorized alteration of a document. In 1984, his license had been suspended for 90 days for charging an excessive fee and failing to "pick up a deed of trust."

In 1984, he received a private reprimand for failure to return overpaid real estate taxes to a client.

The Board concluded that Tucker had developed a pattern of misconduct over a considerable period of time which indicated that he was unable to practice law competently "without causing injury to his clients." In the two cases under direct review, however, Tucker's misconduct, which undoubtedly was aggravating and frustrating to the clients, consisted of no more than delay and failure to communicate. There was no suggestion that his conduct was similar to that for which he had previously been disciplined. It might be a permissible inference that he had learned from the earlier disciplinary proceedings to avoid those kinds of misconduct. If procrastination and failure to communicate with clients are sufficient to justify permanent denial of the privilege of earning a living as a lawyer, the ranks of the practicing bar may soon be seriously depleted.

I do not object to a lesser penalty for Tucker's sins of omission, but I cannot agree that the ultimate sanction is justified. I would reverse the order insofar as it revoked Tucker's license and remand the case for determination of a more appropriate sanction.

STEPHENSON and THOMAS, JJ., joint in dissent.