## Kevin P. Shea

### v.

## Virginia State Bar Disciplinary Board

Record No. 880089

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*Henry P. Bouffard (Jett, Berkley, Furr & Bouffard*, on brief), for appellant.

*Caroline Lowdon Lockerby, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from an Order of the Virginia State Bar Disciplinary Board in which the Board found that Kevin P. Shea violated DR 5-103(B). That disciplinary rule provides in pertinent part that "[w]hile representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client."

In 1984, a seaman came to Shea complaining of personal injuries sustained while working on a barge. The seaman retained Shea on a contingent fee basis. Shea filed suit in federal court. During the pendency of the suit, the client faced eviction notices from his landlord and shut-off notices from the power company. He also had difficulty making automobile payments and meeting other household expenses. Shea came to his client's aid by advancing more than $6,000 in Shea's personal funds to pay his client's creditors. This was a clear violation of DR 5-103(B). Shea conceded as much.

There is no dispute in this appeal concerning the finding of a rule violation. Shea's main contention is that his punishment was too harsh. He argues that instead of a ninety-day suspension, he should have received a public reprimand.

Shea's argument runs as follows: (1) There was a widespread and long-standing practice within the plaintiff's bar in maritime cases to advance living expenses to clients. (2) What Shea did is what many lawyers were doing yet he was singled out for punishment. (3) Shea did not know he was violating the disciplinary rules. (4) The Board wanted to impose nothing more than a public reprimand but imposed a ninety-day suspension, because it was of the mistaken legal view that it was compelled to do so by two recent opinions from this Court. (5) This Court should reverse and remand for reconsideration of his sentence. Shea's contentions are without merit.

■ Every lawyer in Virginia is expected to be fully aware of each and every disciplinary rule. The rules are public and are disseminated to the bar in the Virginia State Bar Professional Handbook. No lawyer can escape a finding of a violation or the imposition of an appropriate sanction by saying, "I did not know I was violating the rules." Such an argument is nothing more than a recitation of the often made and always rejected excuse of ignorance of the law.

■ Nor is it a viable excuse for a lawyer to contend, in effect, that "everybody was doing it." Each lawyer has an individual duty to abide by the disciplinary rules. Each lawyer must take pains to "keep his own house in order." Lawyers are trained and encouraged to be independent thinkers deciding for themselves, based on the law, what conduct is appropriate and what is not. Any lawyer who violates the disciplinary rules must stand ready to bear the individual consequences of that violation regardless of what others were doing.

■ There is an unmistakable undercurrent in Shea's argument to the effect that DR 5-103(B) is not really that important. The suggestion is that it prevents attorneys from being helpful and compassionate to clients who find themselves in dire financial straits during the course of litigation. The question which lurks below the surface of Shea's arguments is this: Why can't a lawyer help a client who needs financial help so long as the client pays the money back from the proceeds of the litigation? The short

answer to that question is that the disciplinary rule says that such conduct is improper.

The broader answer is that the rule in question is intended and designed to maintain the independent judgment of counsel in the representation of clients. If a client owes his attorney money, the attorney may have his own pocketbook in mind as he handles the litigation. That attorney might settle for an amount sufficient to cover the loan to his client, while foregoing the risk of a trial where his client could recover a larger amount *or lose everything.* The policy embodied in DR 5-103(B) is that a lawyer simply should not face this risk to independent judgment. This Court rejects any suggestion that DR 5-103(B) is unimportant.

■ We turn now to the specific question of the appropriateness of Shea's sanction. We held in *Tucker* v. *Virginia State Bar*, 233 Va. 526, 534, 357 S.E.2d 525, 530 (1987), that when this Court reviews a sanction imposed by the Board in a disciplinary proceeding, that sanction "will be viewed on appeal as *prima facie* correct and will not be disturbed unless, upon our independent examination of the whole record, it appears unjustified by a reasonable view of the evidence or is contrary to law."

As pointed out above, Shea argues that the Board really wanted to limit his punishment to a public reprimand. He contends further that the only reason he was given a ninety-day suspension was that the Board interpreted *Tucker* and *Wright* v. *Virginia State Bar*, 233 Va. 491, 357 S.E.2d 518, *cert. denied*, 108 S.Ct. 300 (1987), as mandating a progressively harsher sanction in cases involving lawyers who had prior disciplinary violations. Shea had twice before been sanctioned by the bar; he had previously been given a private reprimand and a sixty-day suspension.

■ In *Tucker*, we wrote as follows: "[T]he Board has both the authority and the responsibility to take into account, in determining appropriate discipline for any violation of the Rules, matters in aggravation as well as in mitigation of the violations proved." 233 Va. at 532-33, 357 S.E.2d at 529; *accord Wright*, 233 Va. at 497, 357 S.E.2d at 521. There is no indication in this record that the Board was of the view that *Tucker* and *Wright* robbed it of judgment and discretion in deciding the appropriate sanction for Shea. Instead, the record reveals that, throughout the penalty portion of the proceeding, the Board indicated an appropriate concern about Shea's past misconduct.

In arguing that the Board only wanted to impose a public reprimand, Shea relies on the following language from the Board's Order: "Because of the apparent long-standing and widespread violations of this Rule and because lawyers did not receive the benefit of an advance warning, *in the absence of the aggravating circumstances discussed below*, the Board would impose only a public reprimand on Kevin P. Shea." (Emphasis added.) This language does not say what Shea contends. The Board did not state that it was of the view that Shea deserved only a public reprimand. What it stated was that a person who came before the Board without aggravating circumstances would have been given a public reprimand. But as noted, Shea did not have a clean slate.

■ Shea's aggravating circumstances were his prior disciplinary violations. The Board made this clear when it announced Shea's sanction:

> Kevin P. Shea is not a stranger to the disciplinary process, having previously received a private reprimand and a suspension for violations of other disciplinary rules. Taking into consideration these past instances of misconduct, it is the Board's opinion and it is accordingly ORDERED that the license of Kevin P. Shea to practice law within the Commonwealth of Virginia be suspended for a period of ninety (90) days.

The Board had a perfect right to consider Shea's past record and to decide to suspend him for ninety days.

■ Shea makes one final argument: that it was unfair for the Board to consider his previous disciplinary violations in deciding the sanction in the instant appeal. According to him, those prior violations should not have been considered because they were unrelated to each other and unrelated to the instant case. He argues, therefore, that the present violation does not establish a pattern of misconduct. We considered and rejected this same argument in *Tucker*. There we said that the phrase "pattern of misconduct" does not mean uniformity of the type of violation. Instead, it means "a propensity to commit various and recurring violations of the Disciplinary Rules harmful to clients and to the public." 233 Va. at 533, 357 S.E.2d at 529. The Board had sufficient evidence upon which to conclude that Shea had established such a pattern of misconduct.

■ We have made an independent examination of the whole record and conclude that the ninety-day suspension is justified by a reasonable view of the evidence. Moreover, we conclude that the Board did not commit any errors of law with regard to consideration of past disciplinary violations. To the contrary, we are of opinion that the Board fully and faithfully complied with *Tucker* and *Wright*. For all the foregoing reasons, the Board's order of suspension will be affirmed.

Because the suspension has been stayed during the pendency of this appeal, the suspension will commence February 1, 1989. Shea shall give notice, by certified mail, of his suspension to all clients for whom he is currently handling matters and to all presiding judges and opposing attorneys in pending litigation. Shea shall further make immediate appropriate arrangements for the disposition of those matters presently in his care, in conformity with the wishes of his clients.

*Affirmed.*