2000 OK 95

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Donald E. SMOLEN, Respondent.**

**No. SCBD–4522.**

Supreme Court of Oklahoma.

Decided Dec. 5, 2000.

Mike Speegle, Oklahoma Bar Association, Oklahoma City, OK, Attorney for Complainant.

Deborah A. Reheard, Samuel M. Cox, Eufaula, OK, Attorneys for Respondent.

HODGES, J.

## I. OVERVIEW

¶ 1 Complainant, the Oklahoma Bar Association, alleged one count of misconduct warranting discipline against respondent attorney, Donald E. Smolen (Respondent). The complaint alleged that Respondent had violated rule 1.8(e) of the Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3–A (1991) (prohibition against providing financial assistance to a client in connection with pending or contemplated litigation). Respondent received a public reprimand in 1992 for loaning money to clients. In an unpublished reprimand issued in 1987, the respondent received an eight-month suspension from the practice of law. The 1987 suspension was imposed for violations of DR 1–102(A)(3) ("engaging in illegal conduct involving moral turpitude"), DR 1–102(A)(4) (engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation"), DR 9–102(B) (failing to preserve the "identity of funds and property of a client"), and rule 1.3 of the Rules Governing Disciplinary Proceedings (acting in a manner "contrary to prescribed standards of conduct").

¶ 2 In the present matter, the parties have stipulated to the facts and recommended discipline. The Professional Responsibility Tribunal (PRT) accepted the stipulations of fact, found that Respondent had violated rule 1.8(e), and recommended Respondent be publicly censured.

## II. FACTS

¶ 3 During Respondent's representation of Mr. Miles in a case before the Workers' Compensation Court, Respondent loaned Mr. Miles $1,200. The check to Mr. Miles recited that the money was for travel expenses. Respondent admitted that the true purpose of the loan was for living expenses because Mr. Miles' home had been destroyed by fire. Without the loan, Mr. Miles indicated he would have to move to Indiana and would be unable to continue his medical treatment or make court appearances. At the time of the loan, Mr. Miles was receiving temporary total disability benefits of $426.00 a week from which Respondent's attorney fee was subtracted. Mr. Miles received $384.00 a week before loan payments.

¶ 4 Respondent's loan to Mr. Miles was interest free and without penalty or cost other than the amount of the principle. Mr. Miles was to repay the loan at $100.00 a week from his temporary total disability benefits. Mr. Miles made three $100.00 payments on the loan. One of the payments was returned to Mr. Miles resulting in his paying only $200.00 on the loan. Respondent agreed to forego further repayment until final settlement of the Workers' Compensation case.

¶ 5 When Mr. Miles became involved in other legal matters, he sought an attorney to handle the additional matters together with the workers' compensation claim. After learning of Mr. Miles search for a new attorney, Respondent terminated the attorney-client relationship with Mr. Miles. Thereafter, Mr. Miles hired Mr. Elias to represent him. During mediation over a fee dispute

between Mr. Miles and Mr. Elias, the Tulsa County Bar Association learned of Respondent's loan and reported Respondent's conduct to the Oklahoma Bar Association.

¶ 6 Respondent admits the loan to Mr. Miles is not an isolated incident. He testified that he had consulted lawyers whose opinions are well respected in legal ethics, and it was their belief that Respondent's conduct would not violate rule 1.8(e). Respondent admits that his actions violate the express language of rule 1.8(e). However, Respondent submits that he has not violated the intent of rule 1.8(e), and that rule 1.8(e) unconstitutionally treats clients who need humanitarian loans differently than clients who receive advances of litigation expenses and court costs.

## III. ANALYSIS

¶ 7 This Court's review of the record is *de novo*.[1] Even though this Court is not bound by the PRT's recommendations, they are noted. Before this Court will impose discipline, the complainant must prove the charges by clear and convincing evidence.[2]

¶ 8 Rule 1.8(e) of the ORPC[3] under which Respondent was disciplined in 1992 for giving financial assistance to clients, provided:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to a client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of med-

ical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

Based on the Model Rules adopted by the American Bar Association,[4] rule 1.8(e) was amended in 1993 to provide:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter.[5]

¶ 9 The primary change under the Model Rules is that the repayment of litigation expenses and court costs may be contingent on the outcome of the case. Both the 1992 and 1993 versions of rule 1.8(e) unambiguously prohibit a lawyer from advancing living expenses to clients. In this case, Respondent advanced funds for living expenses to be repaid from the client's worker's compensation benefits, an action admittedly prohibited by rule 1.8(e).

¶ 10 Most authorities prohibit a lawyer from providing financial assistance to clients for living expenses during representation.[6] In 1991, a draft of a provision of the Restatement of Law would have allowed a lawyer to make or guarantee a loan to a client "if the loan [was] needed to enable the client to withstand delay in litigation that otherwise might unjustly induce the client to settle or dismiss a case because of financial hardship rather than on the merits."[7] However, in

---

1. *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, & 12, 898 P.2d 147, 150.

2. *Id.*

3. Okla. Stat. tit. 5, ch. 1, app. 3 A (1991).

4. Rule 1.8(e) of the Model Rules of Professional Conduct provides:
   A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
   (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

   (2) a lawyer representing an indigent client may pay court costs and expenses of behalf of the client.

5. Okla. Stat. tit. 5, ch. 1, app. 3–A (Supp.1993).

6. Restatement (Third) of Law Governing Lawyers § 36 cmt. c (1998).

7. Restatement (Third) of Law Governing Lawyers § 48 (Tentative Draft No. 4, 1991); American Bar Association, *No Loans for Living Expenses*, Lawyers' Manual on Professional Conduct, May 29, 1996, vol. 12, no. 9., p. 174.

1996 the American Law Institute Council decided the rule was ill-advised,[8] and, in 1998, the provision was removed.[9] The final draft of the Restatement would not allow a lawyer to make or guarantee a loan to a client except for litigation expenses and court costs.[10] Rule 1.8(e) of the American Bar Association's Model Rules of Professional Conduct (Model Rules) adopted in 1983 prohibits a lawyer from advancing funds to a client for living expenses.[11] A proposal to allow lawyers to advance clients funds for living expenses was rejected by the American Bar Association House of Delegates.[12]

¶ 11 Twenty-nine states have adopted the current version of ABA Model Rule 1.8(e) which allows repayment of litigation costs to be contingent on the outcome of the case but forbids advances for living expenses.[13] Fourteen other states follow the ABA Model Code of Professional Responsibility, adopted in 1969,[14] or a version of the Model Rules or Model Code that requires the client remain liable for litigation expenses and court costs and prohibits advances for living expenses.[15]

**8.** American Bar Association, *No Loans for Living Expenses*, Lawyers' Manual on Professional Conduct, May 29, 1996, vol. 12, no. 9., p. 174.

**9.** Restatement (Third) of Law Governing Lawyers § 36 (1998).

**10.** Section 36 of the Restatement (Third) of the Law Governing Lawyers provides:

A lawyer may not make or guarantee a loan to a client in connection with pending or contemplated litigation that the lawyer is conducting for the client, except that the lawyer may make or guarantee a loan covering court costs and expenses of litigation, the repayment of which to the lawyer may be contingent on the outcome of the matter.

**11.** American Bar Association, Annotated Model Rules of Professional Conduct Rule 1.8(e) (4th ed.1999); ABA Comm. on Professional Ethics and Grievances, Formal Op. 288 (1954).

**12.** 1 Goeffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering '1.8:602, at 275 (2d ed. 1998 Supp.).

**13.** Alaska Ct. R., Rules of Professional Conduct Rule 1.8(e); Ark. Ct. R., Model Rules of Professional Conduct Rule 1.8(e); Conn. Ct. R., Rules of Professional Conduct Rule 1.8(e); Del.Code Ann., Lawyers' Rules of Professional Conduct Rule 1.8(e); Fla. Sta. Ann., Rules of Professional Conduct Rule 4–1.8(e); Ga. Ct. R., Rules and Regulations for the Organization and Government of the State Bar, part 4, ch. 1, rule 4–102(e); Haw. Sup.Ct. R., Rules of Professional Conduct Rule 1.8(e); Idaho Ct. R., Rules of Professional Conduct Rule 1.8(e); Ind.Code Ann. tit. 34, app., Rules of Professional Conduct Rule 1.8(e); Kan. Sup.Ct., R. 226, Rules of Professional Conduct Rule 1.8(e); Ky. Sup.Ct. R. 3.130, Rules of Professional Conduct Rule 1.8(e); Md. Code Ann., Lawyers' Rules of Professional Conduct Rule 1.8(e); Mass. Sup.Ct. R., ch. 3, Rule 3:07, Rules of Professional Conduct Rule 1.8(e); Mich. Ct. R., Rules of Professional Conduct Rule 1.8(e); Mo. Sup.Ct. R. 4, Rules of Professional Conduct Rule 4–1.8(e); Nev. Sup.Ct. R. 158(5); N.H. Ct. R., Rules of Professional Conduct Rule 1.8(e); N.J. Ct. R., part 1, app., Rules of Profes-sional Conduct Rule 1.8(e); Ohio Rev.Code Ann., Code of Professional Responsibility Canon 5, DR 5–103 (does not provide that a lawyer may pay court costs and expenses of litigation on behalf of an indigent client); Okla. Stat. tit.5, ch. 1, app. 3–A, Rules of Professional Conduct Rule 1.8(e) (Supp.2000); Pa. Cons.Stat. tit. 42, Rules of Professional Conduct Rule 1.8(e); R.I. Sup.Ct. R., art. 5, rule 1, Rules of Professional Conduct Rule 1.8(e); S.C.Code Ann., App.Ct. R. 407, Rules Governing the Practice of Law Rule 1.8(e);Utah Sup.Ct. R., part 2, ch. 13, Rules of Professional Conduct Rule 1.8(e); Va. Sup.Ct. R., Rules of Professional Conduct Rule 1.8(e); Vt. Ct. R., Rules of Professional Conduct Rule 1.8(e); W. Va. Ct. R., Rules of Professional Conduct Rule 1.8(e); Wis. Sup.Ct. R., ch. 20, Rules of Professional Conduct for Attorneys Rule 20:1.8(e); Wyo. Ct. R., Rules of Professional Conduct for Attorneys at Law Rule 1.8(e).

**14.** Model Code of Professional Responsibility DR 5–103(B), provides:

While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

**15.** Az. Sup.Ct. R. 42, Rules of Professional Conduct Rule 1.8(e) (A lawyer may pay court costs and expenses of litigation on behalf of indigent client.); Colo. Ct. R. Ann., Rules of Professional Conduct Rule 1.8(e); Ill. Stat., Sup.Ct. R., Rules of Professional Conduct Rule 1.8(e) (Illinois follows the Model Rules but explicitly does not allow a lawyer to advance costs and expenses of the litigation unless, in case the client losses, the client remains ultimately responsible or is indigent.); Iowa Code tit. 15, submit. 2, ch. 602, app., Code of Professional Responsibility for Lawyers, DR 5–103; Me. Ct. R., Code of Professional Responsibility Rule 3.7 (does not state whether or not client must remain ultimately responsible for advanced or guaranteed litigation

Only eight states explicitly allow lawyers to advance or guarantee loans to clients for living expenses: Alabama,[16] California,[17] Louisiana,[18] Minnesota,[19] Mississippi,[20] Montana,[21]

expenses and court costs) Neb. Sup.Ct. R., Code of Professional Responsibility DR 5–103; N.M. Rules of Professional Conduct Rule 16–108(E) (A lawyer may pay court costs and expenses of litigation on behalf of indigent client.); N.Y. Jud. Law, app., Code of Professional Responsibility, DR 5–103 (22 NYCRR § 1200.22) (A lawyer may pay court costs and expenses of litigation on behalf of indigent client.); N.C. Ct. R., ch. 2, Revised Rules of Professional Conduct Rule 1.8(e); Or. Ct. R., Code of Professional Responsibility, DR 5–103 (client remains liable "to the extent of the client's ability to pay"); S.D. Codified Laws tit. 16, ch. 16–18, app., Model Rules of Professional Conduct Rule. 1.8(e) (A lawyer may pay court costs and expenses of litigation on behalf of indigent client.); Tenn. Sup.Ct. R., Code of Professional Responsibility, DR 5–103; Wash. Ct. R., Rules of Professional Conduct Rule 1.8(e) (In class actions only, repayment of litigation expenses may be contingent on outcome of the matter.); Maine follows the Model Code of Professional Responsibility but deletes the explicit requirement that the client remain ultimately liable for expenses of the litigation. Me. Ct. R. 3, Code of Professional Responsibility Rule 3.7.

16. Ala. R. of Prof. Conduct, rule 1.8(e)(3) (1995), provides:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that … a lawyer may advance or guarantee emergency financial assistance to the client, the repayment of which may not be contingent on the outcome of the matter, provided that no promise or assurance of financial assistance was made to the client by the lawyer, or on the lawyer's behalf, prior to the employment of the lawyer. …

17. Cal. R. Prof. Conduct, rule 4–210(A)(2) (1989) provides:

A member [of the California Bar Association] shall not directly or indirectly pay or agree to pay, guarantee, represent, or sanction a representation that the member or member's law firm will pay the personal or business expenses of a prospective or existing client, except that this rule shall not prohibit a member … [a]fter employment, from lending money to the client upon the client's promise in writing to repay such loan. …

18. *Louisiana State Bar Assoc. v. Edwins*, 55456 (La.1976), 329 So.2d 437; *see Chittenden v. State Farm Mut. Auto. Ins. Co.*, 98–2919 (La.App. 4th Cir.1999), 748 So.2d 641. Note, Louisiana adopted rule 1.8(e) of the Model Rules of Professional Conduct which provides:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that

(1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

La.Rev.Stat. Ann., tit. 37, ch. 4, art. 16, rule 1.8(e) (1997).

19. 52 Minn.Stat., Rules of Prof. Conduct, rule 1.8(e)(3) (Supp.1999), provides:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that … a lawyer may guarantee a loan reasonably needed to enable the client to withstand delay litigation that would otherwise put substantial pressure on the client to settle a case because of financial hardship rather than on the merits, provided the client remains ultimately liable for repayment of the loan without regard to the outcome of the litigation and, further provided, that no promise of such financial assistance was made to the client by the lawyer, or * * another in the lawyer's behalf, prior to the employment of that lawyer of that client. …

20. Miss. Ct. R., Rules of Professional Conduct, rule 1.8(e) (2000), provides:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings, except that:
1. A lawyer may advance court costs and expenses of litigation, including but not limited to reasonable medical expenses necessary to the preparation of the litigation for hearing or trial, the repayment of which may be contingent on the outcome of the matter; and
2. A lawyer representing a client may, in addition to the above, advance the following costs and expenses on behalf of the client, which shall be repaid upon successful conclusion of the matter.
a. Reasonable and necessary medical expenses associated with treatment for the injury giving rise to the litigation or administrative proceeding for which the client seeks legal representation; and
b. Reasonable and necessary living expenses incurred.

21. Mont. Ct. R., Rules of Professional Conduct Rule 1.8(e)(3), provides:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that … a lawyer may, for the sole purpose of providing basic living expenses, guarantee a loan from a regulated financial institution whose usual business involves making loans if such loan is reasonably needed to enable the client to with-

North Dakota,[22] and Texas.[23]

¶ 12 Only one state has refused to discipline a lawyer for advancing funds to clients for living expenses during representation .[24] In *Louisiana State Bar Ass'n v. Edwins*,[25] the Louisiana State Supreme Court stated that advancing money to an indigent client for necessary living expenses during representation did not violate the Louisiana rules of legal ethics.[26] Even though the *Edwins* court questioned the constitutionality of the rule, the court based its conclusion on a finding that the conduct did not violate the

rule's intent.[27] The lawyer in *Edwins* was disciplined for making advances which were not based on the client's needs.[28] In *In re K.A.H.*,[29] the Alaska Supreme Court held the rule did not unconstitutionally deny or interfere with the client's access to the courts.[30] Further, no court has invalidated rule 1.8(e) based on a constitutional infirmity.

¶ 13 We have has previously disciplined lawyers for providing financial assistance to clients for purposes other than litigation expenses and court costs.[31] Several other courts addressing the question have also imposed discipline on lawyers for like conduct.[32]

stand delay in litigation that would otherwise put substantial pressure on the client to settle a case because of financial hardship rather than on the merits, provided the client remains ultimately liable for repayment of the loan without regard to the outcomes of the litigation and, further provided that neither the lawyer nor anyone on his/her behalf offers, promises or advertises such financial assistance before being retained by the client.

22.  N.D. Ct. R., Rules of Professional Conduct, rule 1.8(e)(3) (2000), provides:
    A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that ... A lawyer may guarantee a loan reasonably needed to enable the client to withstand delay in litigation that would otherwise put substantial pressure on the client to settle a case because of financial hardship rather than on the merits, provided the client remains ultimately liable for repayment of the loan without regard to the outcome of the litigation and, further provided, that no promise of financial assistance was made to the client by the lawyer or by another in the lawyer's behalf, prior to the employment of that lawyer by the client.

23.  Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, art. 10, § 9, rule 1.08(d) (West 1998), provides:
    A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation or administrative proceedings, except that:
    (1) a lawyer may advance or guarantee court costs, expenses of litigation or administrative proceedings, and reasonably necessary medica and living expenses, the repayment of which may be contingent on the outcome of the matter. . . .

24.  *Louisiana State Bar Ass'n v. Edwins*, 329 So.2d 437 (La.1976).

25.  *Id.*

26.  *Id.* at 446.

27.  *Id.* at 446–47.

28.  *Id.* at 448.

29.  967 P.2d 91 (Alaska 1998).

30.  *Id.* at 94.

31.  *State ex rel. Oklahoma Bar Ass'n v. Perry*, 1997 OK 29, & 8, 11, 936 P.2d 897, 899–900; *State ex rel. Oklahoma Bar Ass'n v. Smolen*, 1992 OK 116, 837 P.2d 894; *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 1993 OK 86, 863 P.2d 1123; *State ex rel. Oklahoma Bar Ass'n v. Boettcher*, 1990 OK 92, 798 P.2d 1077.

32.  *In re Stewart*, 121 Ariz. 243, 589 P.2d 886 (1979); *Florida Bar v. Rue*, 643 So.2d 1080 (Fl. 1994) (The Florida Supreme Court rejected an amendment which would allow a lawyer to guarantee loans for living expenses because of the potential conflicts.) *In re Florida Bar Re Amendments to Rules Regulating the Florida Bar*, 635 So.2d 968 (Fl.1994) (A lawyer's gift to a client for basic needs without expectation of repayment does not violate the rules. *Florida Bar v. Taylor*, 648 So.2d 1190 (Fl.1995)); *In re Reed*, 599 N.E.2d 601 (Ind.1992); *Curtis v. Kentucky Bar Ass'n*, 959 S.W.2d 94 (Ky.1998); *Attorney Grievance Comm'n of Md. v. Eisenstein*, 333 Md. 464, 635 A.2d 1327 (1994); *In re Discipline of Hartke*, 529 N.W.2d 678 (Minn.1995); *Mississippi Bar v. Attorney HH*, 671 So.2d 1293 (Miss.1995), *withdrawn, substitute opinion, reh'g denied*, 1996 Miss. LEXIS 75 (Miss.1996) (opinion substantially unchanged; imposing private reprimand) (Rule was amended in 1999 to explicitly allow advances for "[r]easonable and necessary living expenses." *Attorney AAA v. Mississippi Bar*, 735 So.2d 294 (Miss.1999)); *Toledo Bar Ass'n v. McGill*, 64 Ohio St.3d 669, 597 N.E.2d 1104 (1992); *Mahoning County Bar Ass'n v. Ruffalo*, 176 Ohio St. 263, 199 N.E.2d 396 (1964), *cert. denied*, 379 U.S. 931, 85 S.Ct. 328, 13 L.Ed.2d 342 (1964); *In re Brown*, 298 Or. 285, 692 P.2d 107 (1984); *In re Berlant*, 458 Pa. 439, 328 A.2d 471 (1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *In re Reaves*, 272 S.C. 213, 250 S.E.2d 329 (1978); *Shea v. Virginia State Bar*, 236 Va. 442, 374 S.E.2d 63 (1988).

In *Mississippi Bar v. Attorney HH*,[33] the Mississippi Supreme Court expressed its concern that allowing a lawyer to advance funds to a client for living expenses would "generate unseemly bidding wars for cases and inevitably lead to further denigration of our civil justice system." [34]

## A. INTENT OF THE RULE

¶ 14 Respondent admits violating rule 1.8(e) but argues that he should not be disciplined because he did not violate the intent of the rule. What Respondent in reality requests is that we adopt an exception to the rule that allows attorneys to make loans to clients for necessary living expenses after the attorney-client relationship is established.

¶ 15 The rule against attorneys providing financial assistance to clients for living expenses is based on the common-law prohibitions against practice of champerty and maintenance.[35] The evils associated with champerty and maintenance intended to be prevented by rule 1.8(e)'s prohibition are: (1) clients selecting a lawyer based on improper factors,[36] and (2) conflicts of interest, including compromising a lawyer's independent judgment in the case [37] and creating the potentially conflicting roles of the lawyer as both lawyer and creditor with divergent interests.[38]

¶ 16 Respondent argues that he advanced the funds only after the attorney-client relationship was established with repayment to be made from benefits which had already been awarded, and the loan was for humanitarian purposes. Thus, he posits that the evils of champerty and maintenance are absent here and that he should not be disciplined because he did not violate the intent of the rule. We reject this argument as have most other states. First, Mr. Miles' workers' compensation claim had not been completely resolved. He was receiving only temporary benefits at the time Respondent made the loan, and, at least, a potential settlement regarding permanent disability remained pending. Second, it would be unrealistic to conclude that even if Respondent does not publicize that he makes loans to clients for living expenses, potential clients would not learn of Respondent's practice from existing and past clients. Thus, potential clients may base their decision to retain Respondent on improper inducements. The fact that the loan was for humanitarian purposes may be a mitigating factor. Nonetheless, Respondent violated rule 1.8(e).

¶ 17 Given that the Restatement and the ABA have rejected the same exception tendered by Respondent and an overwhelming number of courts have also declined to adopt Respondent's proposed exception,[39] we also decline to make the ad hoc exception to rule 1.8(e) advocated by Respondent. We are not unsympathetic to the plight of litigants. However, because of the potential ethical problems which can arise from a lawyer advancing clients money for living expenses, the explicit prohibition against such conduct in the Oklahoma Rules of Profession-

---

33. 671 So.2d 1293 (Miss.1995), *withdrawn, substitute opinion, reh'g denied*, 1996 Miss. LEXIS 75 (Miss.1996) (opinion substantially unchanged; imposing private reprimand).

34. *Id.* at 1298.

35. 1 Goeffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering '1.8:601, at 273 (2d ed. 1998 Supp.); Michael R. Koval, *Living Expenses, Litigation Expenses, and Lending Money to Clients*, 7 Geo. J. Legal Ethics 1117 (1994). Champerty is "[a] bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." Black's Law Dictionary 209 (5th ed.1979). "Maintenance" is "[a]n officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party,

with money or otherwise, to prosecute or defend it." *Id.* at 860.

36. 2 ABA/BNA, Lawyers' Manual on Professional Conduct 51:803 (2000); *Mississippi Bar v. Attorney HH*, 671 So.2d 1293, 1296 (Miss.1995), *withdrawn, substitute opinion, reh'g denied*, 1996 Miss. LEXIS 75 (Miss.1996) (opinion substantially unchanged; imposing private reprimand) ("[U]nregulated lending to clients would generate unseemly bidding wars for cases and inevitably lead to further denigration of our civil justice system.").

37. *Kentucky Bar Ass'n v. Mills*, 808 S.W.2d 804 (1991).

38. Restatement of the Law Governing Lawyers, § 48, cmt. d (Tent. Draft No. 4, 1991).

39. See cases cited in footnote 32.

al Conduct, we believe Respondent should be disciplined.

## B. CONSTITUTIONALITY

¶ 18 Respondent asserts that rule 1.8(e) is invalid because it does not treat similarly situated classes of litigants equally. The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."[40] This same prohibition is present in article 2, section 7 of the Oklahoma Constitution.[41] The two classes of clients proposed by Respondent are those who need advances for living expenses and those who need advances for litigation costs.

¶ 19 The deferential rational basis test is applied in constitutional challenges based on the equal protection clause when the classification is not based upon an inherently suspect characteristic or jeopardizes a fundamental right.[42] The divergent treatment must have only "some relevance to the purpose for which the classification is made."[43] Respondent does not argue that the classification is based on an inherently suspect characteristic or that a fundamental right is jeopardized. Thus, Respondent's challenge is analyzed under the rational basis test.

¶ 20 Assuming for purposes of argument that the two classes posed by Respondent are similarly situated, rule 1.8(e)'s disparate treatment of advances for litigation expenses and court costs and advances for all other expenses is based on legitimate goals and reflects the differences in living expenses and litigation expenses and court costs. First, litigation expenses and court costs are directly related to the actual litigation. Living and other expenses are not. Second, litigation expenses and court costs are within a lawyer's expertise. Other expenses of clients are not considered part of a lawyer's

expertise. Third, it is a lawyer's duty to advise his client on which litigation expenses and court costs are necessary for the litigation. It is not generally the lawyer's duty to advise his clients as to what other expenses are necessary. Fourth, a lawyer generally pays the litigation expenses and costs directly to the provider. In the case of other expenses, the lawyer generally would give the money to the client, and there would be no guarantee that the money would be utilized for the loan's intended purpose.

¶ 21 We agree with the drafters of the Restatement and the ABA Model Rules that a rule allowing lawyers to make loans to clients for reasons other that advancing litigation expenses and court costs is ill-advised. Because of the potentially inherent abuses in allowing lawyers to make loans to clients for reasons other than litigation expenses and court costs, the divergent treatment is rationally related to a legitimate goal of protecting clients and maintaining the integrity of the Bar. Respondent has failed to show that rule 1.8(e) is unconstitutional.

## IV. APPROPRIATE DISCIPLINE

¶ 22 Respondent has been previously disciplined by this Court, once in 1987 and again in 1992. In 1992, Respondent was publicly censured for the same misconduct with which he is presently charged. He admits that the current loan is not an isolated incident. One of the purposes of discipline is "deterrence of like behavior by both the respondent and other members of the bar."[44] This Court is not bound by the stipulated discipline of the parties.[45] Because Respondent was previously disciplined in 1987 for violations of ethical standards, was publicly censured in 1992 for the same misconduct for which he is being disciplined in this matter, and has admitted that the current violation is not an isolated incident, we deem the appropriate discipline is a sixty-day suspension.

40.  U.S. Const. amend. XIV.

41.  Okla. Const. art. II, § 7, provides: "No person shall be deprived of life, liberty, or property, without due process of law."

42.  *Presley v. Bd. of County Comm'n of Okla. County*, 1999 OK 45, & 9, 981 P.2d 309, 313.

43.  *Brown v. Lillard*, 1991 OK 74, & 13, 814 P.2d 1040, 1043 (citing *T.I.M. v. Okla. Land Title Ass'n*, 1984 OK 66, & 30, 698 P.2d 915, 920.)

44.  *State ex. rel. Okla. Bar Ass'n v. Arnett*, 1991 OK 44, & 17, 815 P.2d 170, 171.

45.  *State ex. rel. Okla. Bar Ass'n v. Downing*, 1990 OK 102, & 12, 804 P.2d 1120, 1122.

## V. COSTS

¶ 23 The Bar Association's application to assess costs in the amount of $583.15 is granted. The respondent shall pay said costs within thirty days from the date this opinion becomes final.

## VI. CONCLUSION

¶ 24 Based on respondent attorney Donald E. Smolen's violation of rule 1.8(e) of the Oklahoma Rules of Professional Conduct, he is suspended from the practice of law for sixty days and is ordered to pay the costs of these proceedings in the amount of $583.15.

RESPONDENT SUSPENDED FOR SIXTY DAYS AND ORDERED TO PAY COSTS.

¶ 25 HARGRAVE, V.C.J., LAVENDER, OPALA, WATT, and WINCHESTER, JJ., concur.

¶ 26 SUMMERS, C.J., and KAUGER, J., concur in part; dissent in part.

¶ 27 BOUDREAU, J., disqualified.